**WESTERN FIRE & INDEMNITY COMPANY, Appellant,**

v.

**Lloyd DYE et ux., Appellees.**

No. 7761.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 27, 1967.

Rehearing Denied Dec. 26, 1967.

Crenshaw, Dupree & Milam and Cecil Kuhne, Lubbock, for appellant.

Splawn & Maner and Don Reed, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal by Western Fire & Indemnity Company from a judgment based upon a jury verdict in a workmen's compensation case arising from accidental injuries sustained by plaintiff-appellee, Naomi Dye, while employed at Underwood's Cafeteria in Lubbock, Texas. The suit is prosecuted in the name of Lloyd Dye on behalf of his wife, Naomi Nell Dye. Upon the jury's finding that Mrs. Dye's weekly wage immediately preceding her injuries was $56.82 and that she was permanently disabled, compensation was awarded at the rate of $34.09 per week for 401 weeks as per Art. 8306, Sec. 10, Workmen's Compensation, Vernon's Tex.Civ.St.

Among the points upon which the appeal is prosecuted by Western Fire & Indemnity Company is its second point to the effect that the finding by the jury of an average weekly wage of $56.82 under Special Issue 15 is contrary to the great weight and preponderance of the evidence. We hold the point is well taken.

In passing upon the point it is the duty of this court to weigh and consider that evidence which supports the verdict and that which does not, and to set

aside the judgment and remand the case if after such consideration we conclude the verdict is so contrary to the overwhelming weight of all the evidence as to be manifestly unjust, regardless of whether there is some evidence to support it. Prewitt v. Watson, 317 S.W.2d 954, Tex.Civ.App.Amarillo, 1958, approved, Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815; In re King's Estate, King v. King, 150 Tex. 662, 244 S.W.2d 660.

The only testimony in the record upon which a finding by the jury could be supported for an average weekly wage rate of as much as $56.82 is the following question and answer:

"Q. $5.00 a week for the banquet and $5.00 a week for uniforms, and then considering them all together on the average of what you would make each week before any deductions were taken out, your gross income, what would you estimate that you earned out there counting everything, Mrs. Dye?"

"A. Approximately $60.00."

In considering the testimony contrary to the figure stated we find that Mrs. Dye admitted she punched a time clock and she would not quarrel with whatever the time cards showed. The time cards showed she worked 282 regular days and 8 days extra at parties rather than the approximate 270 days some of her other testimony had indicated. She worked 5½ days a week.

Instead of ten banquets extra at $5.00 each she testified about, the records showed she worked eight banquets and earned $40.00 extra in that work. Then, instead of $5.00 per week for uniforms, the record shows she used four a week which costs $1.70 per week rather than the $5.00 per week that she testified went into the $60.00 a week earnings. The records required to be kept by appellee's employer also show Mrs. Dye's total earnings from the time she went to work on June 4, 1964 until May 11, 1965, the day she was injured, was $2,258.22 plus $40.00 extra she received in working banquets. The payroll records are in evidence without objections. Those figures total $2,298.22. The four uniforms at $.35 each totals $1.70 per week, or a total of $68.60. This sum added to the $2,298.22 figure totals $2,366.82, which gives $8.16 per day earned on the basis of the 290 days the record shows she worked. Multiplying the average daily wage of $8.16 by 300 gives a total of $2,448.00, which, when divided by the 52 weeks in a year, gives an average weekly wage of approximately $47.08,[1] $9.74 less than found by the jury. Then it is obvious that the great weight and preponderance of the evidence is contrary to the jury verdict.

Though Mrs. Dye had made just an estimate of the cost per week of $5.00 for laundry of her uniforms and admitted on cross examination she did not know what it cost, even if the figure is to be used, the probative evidence would still show substantially less an amount of average weekly wage than found by the jury. Additionally, when she agreed to the records, the speculative evidence she had given previously with respect to the number of days she worked, would, in our opinion, not constitute probative evidence as to the number of days she worked contrary to those records.

█ This is not one of those harmless error cases such as shown under note 546, page 500, Vol. 23, Art. 8309, sec. 1, V.T.C.S., Workmen's Compensation "Harmless error as to wages or earnings." To the contrary, even the weekly wage rate of $56.82 found by the jury, when multiplied by 60% results in less than the maximum of $35.00 per week. Figured on the basis of the probative evidence, the total amount of compensation would be several hundred dollars less than found by the jury.

█ In weighing all the evidence in favor of the jury's verdict on Special Issue

1. Art. 8309, sec. 1, subsection (1) V.T.C.S.

No. 15 and all that which does not support such issue, we conclude the verdict is so contrary to the overwhelming weight of all the evidence as to be manifestly unjust, regardless of whether there is some evidence to support it. Such issue being material to the judgment rendered, the judgment of the trial court is reversed and remanded for a new trial.